to the petition before one James H. Clary, a notary public, and that he was present when each of the other persons signed his name on such sheet, and that the affidavit of each of them was taken by such notary. He has omitted, however, to sign the certificate attached thereto to that effect, and the petition was filed with the Secretary of State with such omission and is still in that condition. It is, therefore, on its face, defective to that extent. Many other defects in the petition are urged, which need not be considered, for it is evident that, if the two papers received at the office of the Secretary of State by mail on March 12th cannot be considered to bring the number of signers above the requisite 451, the attempted nomination must fail. Each of the envelopes containing these papers bears the postmark at Auburn, March 11, 1912, one at 5 p. m. of that day, and they were neither of them received at the Secretary's office until the next day, which was one day late. No reason is assigned by the respondents to excuse the delay, except that the law under which they were acting was new and that the magnitude of the task in procuring the requisite number of names was such that the filing could not have been made earlier. It is evident, however, that the parties concerned in the movement to make this nomination were aware of the fact that March 11th was the last day under the law for filing the petition, and that under the statute time is an essential element of any successful working of the scheme of conducting elections thereunder.

[2] The Court of Appeals has held with respect to a similar statute that the statutory requirement as to the time when certificates of nomination should be filed was mandatory, and that the Supreme Court might relieve from accidents or mistakes causing delay in such filing only when the delay was not due to the negligence or fault of the convention making the nomination, or of the party to whom the filing of the certificate was intrusted. Matter of Darling, 189 N. Y. 570, 82 N. W. 438. No such case is presented here. On the contrary, the delay in filing the two last-named papers appears to have been caused by the want of diligence of those having them in charge and with full knowledge of the statutory requirements with respect to the time for filing.

It appears that the Secretary of State, under some misapprehension of the law, has sent forth a certificate of the nomination of Mr. Swarthout to the custodians of primary records of Cayuga and Seneca counties. These custodians should be directed to return these certificates to the Secretary of State, and the application of the petitioner should be granted.

Application granted.

---

### In re VAN KLEECK.

(Supreme Court, Appellate Division, Third Department. June 27, 1912.)

EMINENT DOMAIN (§ 265*)—COSTS, FEES, AND EXPENSES.

Under Laws 1905, c. 724, § 32, providing that the fees of commissioners appointed to assess damages for the appropriation of lands by the city of New York for reservoirs, their necessary traveling expenses, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

other expenses shall be paid by the city comptroller after being taxed by a justice of the Supreme Court, the commissioners must pay their own traveling expenses and have them taxed in their bill; and a person having a livery bill or bill for automobile hire against a commissioner cannot have it taxed against the city, but must collect it from the commissioner.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 690–693; Dec. Dig. § 265.*]

Smith, P. J., and Lyon, J., dissenting.

Appeal from Special Term, Ulster County.

Application by John Van Kleeck to have his claim against the City of New York taxed and adjusted. From an order appointing a referee, the City appeals. Reversed and motion denied.

Argued before SMITH, P. J., and KELLOGG, BETTS, HOUGHTON, and LYON, JJ.

Archibald B. Watson, Corp. Counsel, of New York City (Wm. McM. Speer, of New York City, of counsel), for appellant.

Augustus H. Van Buren, of Kingston, for respondent.

JOHN M. KELLOGG, J. The moving affidavit shows that commissioners were appointed to assess damages for the appropriation of lands for the Ashokan reservoir to furnish the city of New York with an additional water supply, that various commissioners and an expert witness from time to time hired livery horses of the claimant for use with reference to their duties, and had not paid therefor, and alleges that the city of New York owes him therefor.

Section 32, c. 724, of the Laws of 1905, provides:

"The fees of the commissioners of appraisal and the salaries and compensation of their employés, and their necessary traveling expenses, and all other necessary expenses in and about the special proceedings provided by this act to be had for acquiring title or extinguishing claims for damage to real estate shall be paid by the comptroller of the city of New York out of the funds hereinafter provided. Such fees and expenses shall not be paid until they have been taxed before a justice of the Supreme Court in the judicial district in which the lands or some part thereof are situated upon eight days' notice to the corporation counsel of the City of New York."

The plaintiff's bill contains 95 items, aggregating $312. In some cases the number of the commission is stated for which the alleged services were rendered. In many cases no such statement appears. The affidavit in defense alleges that the expert witness was paid in full for his services and all disbursements made by him, and that, if anything remains due from him to the livery man, it is his personal matter. The bill indicates that most of the items were furnished for commissions Nos. 1, 2, 6, 7, 9, 11, and 12. The answering affidavit shows: That most of said commissions rendered bills for their services and disbursements, including horse hire and traveling expenses and have been settled with in full; that there was paid for disbursements and conveyances and horse hire as follows: To commission No. 1 the sum of $700; to commission No. 2 the sum of $500; to commission No. 6 more than $500; to commission No. 7,

$500; to commission No. 9, $900; to commission No. 11 more than $1,400; and to commission No. 12 more than $2,000. That in such bills are specific charges for traveling, livery transportation, and conveyances, which have been duly taxed and paid. That in several of the cases, by agreement with the commission, the payments were in full for all claims, whether for services or disbursements.

Much trouble has arisen in adjusting the disbursements of the various commissions, and the question of automobile hire and other livery bills of the commissions have been before the court and the bills materially reduced. If every person who furnished anything to one of these commissions may make a separate application and have his bill taxed against the city, much confusion will arise, and it will cost the city large sums of money to determine whether the bills are just and proper; but, if each commissioner is allowed to tax his own disbursements, pay the same, and be reimbursed for them, the process is simple, and in each case a certificate of the commissioner is furnished that the bill is proper and for the benefit of the city It is almost impossible for the city to defend against this bill in its present form, and it may be difficult to show whether certain items embraced in the bills of commissioners are duplicated in the claimant's bill. The city has the right to insist that the most orderly way be adopted and that an obligation against the city cannot be created by every one connected with the condemnation proceedings.

If the claimant has furnished liveries to a commissioner and has not been paid, evidently the commissioner ordering the services is responsible for the same, and, if the commissioner has not already been paid for it, he may, if it is a proper disbursement, tax his bill against the city.

We only determine that this motion is not the orderly and proper way for the taxation of the disbursements of the commissioners, and that the commission should adjust its bills, and cause the same to be properly taxed.

The order should therefore be reversed, and the motion denied, without costs. All concur, except SMITH, P. J., and LYON, J., dissenting.